## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SKYBRIDGE CAPITAL II, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:15-cv-01643 |
| v. | § | |
| | § | |
| SKYBRIDGE WEALTH MANAGEMENT | § | **JURY TRIAL DEMANDED** |
| LLC, | § | |
| | § | |
| Defendant. | § | |

### COMPLAINT

Plaintiff, SkyBridge Capital II, LLC (hereinafter "Plaintiff" or "SkyBridge"), for its Complaint against Defendant SkyBridge Wealth Management LLC ("Defendant" or "SkyBridge Wealth Management"), hereby states as follows:

### THE PARTIES

1.      Plaintiff SkyBridge is a Delaware limited liability company with a principal place of business at 527 Madison Avenue, 16th Fl., New York, New York 10022.

2.      Upon information and belief, Defendant is a Texas corporation with its principal place of business at 12 Greenway Plaza, Suite 1100, Houston, TX 77084.

### JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 (a)-(b), and 15 U.S.C. §§ 1116 and 1121.  This Court also has jurisdiction under the principles of supplemental jurisdiction and pursuant to 28 U.S.C. § 1367 over Plaintiff's claims for trademark infringement and unfair competition under Texas common law.

4.      This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant has a principal place of business in this District and regularly conducts business within this District.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because Defendant has a principal place of business in this District, is subject to personal jurisdiction in this District, and has engaged in and continues to engage in acts of trademark infringement and unfair competition in this District.

## SKYBRIDGE

6.      SkyBridge's predecessor company, SkyBridge Capital, LLC, was founded in 2005 by Anthony Scaramucci to provide hedge fund seeding services to new and emerging hedge fund managers.

7.      In 2008, SkyBridge Capital, LLC partnered with another financial services firm to form SkyBridge, which is now a global alternative investment firm with $13.2 billion in assets under management or advisement.  Having multiple offices in the United States and abroad, SkyBridge offers hedge fund and mutual fund investing solutions that address a wide range of market participants, from individual investors to large institutions.

8.      SkyBridge has been actively and continuously engaged in interstate commerce for services relating to financial advisement and investment management since at least as early as January, 2006.

9.      SkyBridge is registered with the Securities and Exchange Commission ("SEC") as an investment adviser in good standing.

10.     SkyBridge is famous within the financial services industry for its various products and services, including SkyBridge's SEC-registered funds of hedge funds, which are structured as

onshore Delaware LLCs and taxed as regulated investment companies; the SkyBridge Dividend Value Fund, which is structured as a mutual fund generally available to the public; SkyBridge's private funds, which are structured as onshore or offshore funds offered to qualified investors that may or may not invest in a master-feeder structure; and SkyBridge's customized separate account portfolios and advisory services, with clients including family offices, endowments, foundations, sovereign wealth investors, and a Fortune 500 pension plan.

11.     SkyBridge is the sole owner of U.S. Registration Nos. 3,687,570 (SKYBRIDGE); 3,690,668 (SKYBRIDGE CAPITAL); and 3,992,933 (SALT SKYBRIDGE ALTERNATIVES CONFERENCE & Bridge Design) (collectively, the "SkyBridge Marks").

12.     The SkyBridge Marks are arbitrary and inherently distinctive.

13.     SkyBridge has continuously used the trademark SKYBRIDGE in commerce in the United States since January 6, 2006, and has been granted and maintains a federal trademark registration for SKYBRIDGE (Reg. No. 3,687,570, a true copy of which is attached hereto as Exhibit A).  Such registration is valid, subsisting, and incontestable.

14.     SkyBridge has continuously used the trademark SKYBRIDGE CAPITAL in commerce in the United States since January 6, 2006, and has been granted and maintains a federal trademark registration for SKYBRIDGE CAPITAL (Reg. No. 3,690,668, a true copy of which is attached hereto as Exhibit B).  Such registration is valid, subsisting, and incontestable.

15.     SkyBridge has continuously used the trademark SALT SKYBRIDGE ALTERNATIVES CONFERENCE & Bridge Design in commerce in the United States since May 13, 2009, and has been granted and maintains a federal trademark registration for SALT SKYBRIDGE ALTERNATIVES CONFERENCE & Bridge Design (Reg. No. 3,992,933, a true copy of which is attached hereto as Exhibit C).  Such registration is valid and subsisting.

16.     SkyBridge has used and promoted the SkyBridge Marks in brochures and advertisements, on webpages, at industry trade shows and events, and on its actual website. Representative copies of some of these materials are attached hereto as Exhibit D.

17.     As a result of SkyBridge's extensive use and promotion of the SkyBridge Marks, to the extent permitted, as well as SkyBridge's maintenance of high quality standards for all products and services bearing the SkyBridge Marks, as well as the breadth of investors owning SkyBridge products and services (SkyBridge has approximately 38,000 investors in its products), the SkyBridge Marks have acquired positive recognition among relevant consumers as identifiers and symbols of SkyBridge and its associated products, services, and goodwill.  Accordingly, the SkyBridge Marks are strong and are entitled to a broad scope of protection.

18.     In addition to managing multi-strategy funds of hedge funds, customized separate account portfolios and the SkyBridge Dividend Value mutual fund available to the general public, and providing hedge fund advisory services, SkyBridge also produces a large conference series in the United States and abroad known as the SkyBridge Alternatives Conference (SALT) (hereinafter, the "SALT Conference").

19.     The SALT Conference is a thought leadership event committed to facilitating balanced discussions and debates on macro-economic trends, geo-political events, and alternative investment opportunities.

20.     The SALT Conference is an exclusive event that requires potential attendees to undergo an application process facilitated and managed by SkyBridge.  SALT Conference attendees include over 1,800 thought leaders, public policy officials, business professionals, investors, and money managers from over 42 countries and 6 continents.

21.     The SALT Conference is famous within the financial services industry, with past featured speakers including President George W. Bush, President Bill Clinton, President Nicholas Sarkozy, Prime Minister Ehud Barak, Prime Minister Tony Blair, Prime Minister George Papandreou, Vice President Al Gore, Governor Mitt Romney, General David Petraeus, General Colin Powell, the Honorable Gordon Brown, Sir Richard Branson, Mikhael Gorbachev, Condoleezza Rice, Leon Panetta, Timothy Geithner, T. Boone Pickens, Ben Bernanke, Sam Zell, Jamie Dinan, Dan Loeb, John Paulson, Paul Singer, David Tepper, Al Pacino, Kevin Spacey, Magic Johnson, and Francis Ford Coppola, to name a few.

22.     In addition to being famous in the financial services industry as an exemplary provider of investment advice and other financial products and services, SkyBridge has become famous as the sponsor and host of the SALT Conference, and the SkyBridge Marks are closely linked to the SALT Conference in the eyes of the relevant public.  Advertising and promotion of the SkyBridge Marks takes place through SkyBridge's advertising and promotion of the SALT Conference, including prominent placement of the SkyBridge Marks on the SALT Conference website, agendas and other printed materials, and staging showcased throughout the duration of the SALT Conference.

23.     SkyBridge is also involved in various forms of community outreach, such as the recently instituted West Palm Beach, Florida community bicycle sharing program "SkyBike" or "SkyBike Presented By SkyBridge Capital", through which the general public has become additionally aware of the SkyBridge Marks.  Further, SkyBridge is a committed sponsor of numerous charitable events in its name, including events supporting the Navy SEAL Foundation, the Green Beret Foundation, and the Wounded Warrior Project.  SkyBridge's emphasis on

community involvement has additionally caused the general public to recognize the SkyBridge Marks as indicators of SkyBridge products and services.

24.     SkyBridge's reputation for superior financial insight has been additionally furthered due to its receipt of ongoing and frequent unsolicited publicity, including without limitation numerous mass market media interviews and published statements of SkyBridge founders and principals.

25.     In addition to the SALT Conference, the SkyBridge Marks have become famous within the financial services industry through SkyBridge's published White Papers and the participation of its founders and principals as experts for the media.

26.     As further evidence of SkyBridge's influence and outreach within the financial services industry, SkyBridge Media LLC, an affiliate of SkyBridge, produces "Wall Street Week," a show that airs weekly on Sunday mornings on Fox broadcast stations in the key markets of New York, San Francisco, Chicago, and Washington D.C., and is streamed nationally on wallstreetweek.com every Sunday at 11:00 A.M.

27.     Anthony Scaramucci, the Founder and Managing Partner of SkyBridge, is a principal host of "Wall Street Week," and the SkyBridge Marks have become additionally famous within the relevant industry due to SkyBridge's close affiliation with "Wall Street Week."  Mr. Scaramucci is a regular contributor to Fox Business Network and Fox News Channel, and is the author of numerous books and publications, all of which refer to his affiliation with SkyBridge.

28.     SkyBridge's extensive involvement and outreach within the financial services industry and industries related thereto has led the relevant consuming public to identify the SkyBridge Marks with the highest caliber of financial products and services.  Because the SkyBridge Marks have become so influential within the financial services industry, SkyBridge is

committed to and has spent time maintaining, protecting, and enforcing the integrity of its name and trademarks.

## DEFENDANT'S UNLAWFUL CONDUCT

29.    Upon information and belief, on May 18, 2014, Defendant incorporated in Texas under the name SKYBRIDGE WEALTH MANAGEMENT LLC ("SkyBridge Wealth Management").

30.    Upon information and belief, Defendant engages in financial advisory services relating to wealth management.

31.    Upon information and belief, Defendant has marketed, advertised, offered for sale, and/or sold wealth management services under the service mark SKYBRIDGE WEALTH MANAGEMENT within the United States, including within the Southern District of Texas.

32.    Upon information and belief, Defendant additionally owns and operates the domain name www.skybridgewealthmanagement.com (the "Infringing Domain Name").

33.    Upon information and belief, the Infringing Domain Name links to a webpage that features the mark SKYBRIDGE WEALTH MANAGEMENT & Bridge Design.  A copy of the webpage associated with the Infringing Domain Name is attached hereto as Exhibit E.  A copy of the mark SKYBRIDGE WEALTH MANAGEMENT & Bridge Design is attached hereto as Exhibit F.

34.    Upon information and belief, Defendant's founder and principal is Mr. John E. Harmon.

35.    Upon information and belief, Mr. Harmon selected the marks SKYBRIDGE WEALTH MANAGEMENT and SKYBRIDGE WEALTH MANAGEMENT & Bridge Design (the "Infringing Marks") for use by Defendant.

36.     Defendant neither consulted nor received permission from SkyBridge prior to or following Defendant's adoption and use of the Infringing Marks.

37.     Upon information and belief, SkyBridge's dates of first use for each of the SkyBridge Marks predates Defendant's selection and use of the Infringing Marks.

38.     Upon information and belief, at the time Mr. Harmon and Defendant selected the Infringing Marks, Mr. Harmon and Defendant were aware of Plaintiff SkyBridge, as well as SkyBridge's famous name and trademarks.

39.     Despite Mr. Harmon's knowledge of SkyBridge's name and trademarks, upon information and belief, Defendant continues to use the Infringing Marks and maintain the Infringing Domain Name.

40.     Upon information and belief, Mr. Harmon's knowledge and recognition of SkyBridge as an industry leader that markets itself under the SkyBridge Marks is evidenced by Mr. Harmon's application to attend the SALT Conference hosted by SkyBridge in Las Vegas, Nevada in May of 2015.  The request to attend was denied.

41.     Upon learning of SkyBridge Wealth Management via Mr. Harmon's application to attend the SALT Conference, on May 15, 2015, SkyBridge, by and through its counsel, sent Mr. Harmon a cease and desist letter demanding that Defendant immediately cease all use of SKYBRIDGE.  A copy of the May 15, 2015 letter is attached hereto as Exhibit G.

42.     On the same day, Mr. Harmon contacted SkyBridge's attorneys and indicated that Defendant had no intention of ceasing its use of SKYBRIDGE at this time.

43.     Upon information and belief, Defendant's selection and use of the Infringing Marks and the Infringing Domain Name represents a calculated effort on the part of Defendant to associate itself with and profit off of the industry recognition and acclaim that SkyBridge has

rightfully earned through years spent as a celebrated thought leader in the financial services industry.

44.     Upon information and belief, Defendant's selection of the Infringing Marks and the Infringing Domain Name was made with the intent to siphon from SkyBridge's accumulated goodwill, and, upon information and belief, Defendant's continued use of the Infringing Marks and the Infringing Domain Name represents an ongoing effort by Defendant to confuse potential consumers, and to benefit from such confusion by attracting clients who have come to associate the SkyBridge name with SkyBridge's exemplary products and services.

45.     Upon information and belief, Defendant is aware of Mr. Scaramucci's host role on "Wall Street Week," and of SkyBridge's affiliation therewith.

46.     Upon information and belief, Defendant's intent to conflate SkyBridge Wealth Management with SkyBridge in the minds of the consuming public is further evidenced by the background photo on the webpage associated with the Infringing Domain Name, which depicts Mr. Harmon in a news studio and in front of a television camera, and by Mr. Harmon's Twitter account, which identifies Mr. Harmon as "Founder-SkyBridge Wealth Management LLC" and provides a link to the Infringing Domain Name, and which features a photo of Mr. Harmon standing in a Fox News studio, in front of a television screen reading "Fox 26 News."  Upon information and belief, Mr. Harmon's choice to promote Defendant through such pictures, which depict Defendant's affiliation with a Fox program similar to "Wall Street Week" and similar to the Fox programs in which Mr. Scaramucci frequently appears as a contributor, indicates Defendant's intent to further associate itself with SkyBridge and benefit from SkyBridge's name and trademarks.

47.     Due to Defendant's unlawful conduct, actual and potential purchasers and consumers of financial goods and services are likely to mistakenly believe that Defendant is licensed, approved or sponsored by, or in some way related to or affiliated with, SkyBridge and the SkyBridge Marks.

48.     The risk of confusion caused by Defendant's unlawful conduct is especially serious in light of the potential for consumers to assume that Defendant is a SkyBridge affiliate subject to regulation by the SEC.  The SEC regulates wealth managers by requiring them to register under the Investment Advisers Act of 1940, under which SkyBridge is duly registered and in good standing.  Defendant's infringing conduct implies that Defendant is affiliated with or sponsored by SkyBridge, and, therefore, potential SkyBridge investors stand to unwittingly invest funds with Defendant, a self-described "financial consultant" with no stated investing background or industry licenses, operating outside the bounds of required SEC registration.

49.     At the time Defendant first used the Infringing Marks in commerce, Defendant had actual and constructive notice of SkyBridge's federally registered trademarks under 15 U.S.C. § 1072.

50.     Unless enjoined, Defendant's use of the Infringing Marks will continue to cause confusion in the relevant market as to the source, affiliation, or sponsorship of Defendant's goods and services.

51.     Defendant's use of the Infringing Marks, unless enjoined, stands to subject SkyBridge to immediate financial and reputational harm.  SkyBridge is registered with the National Futures Association as a Commodity Pool Operator and Commodity Trading Advisor, and, through an affiliate, maintains a broker-dealer registration with FINRA.  Each of such registrations are in good standing owing to a robust internal compliance system at SkyBridge.

Defendant's unlawful conduct is likely to result in consumer confusion, and is therefore likely to subject SkyBridge to public inquiry by the foregoing federal regulators, as well as various state regulators.  Such public inquiry would cause immediate, continuing, and irreparable harm to SkyBridge's business and reputation.  In the financial services industry, reputation is the single most important asset owned by a firm.

52.     Defendant has willfully engaged in unfair competition in connection with the advertisement, offering for sale, and sale of goods and services in commerce under the Infringing Marks, causing irreparable harm and damage to SkyBridge.

53.     Unless Defendant's acts of trademark infringement and unfair competition are enjoined, SkyBridge will suffer irreparable injury for which there is no adequate remedy at law. SkyBridge will be filing a separate motion for preliminary injunction and intends to request the Court to enter a preliminary injunction as soon as the Court will hear or consider the matter.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

54.     SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

55.     Plaintiff is the sole owner of the SkyBridge Marks, which are registered with the United States Patent and Trademark Office and are valid and protectable.

56.     The unlawful actions of Defendant, as set forth above, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, or sponsorship of Defendant's goods and services, and are likely to falsely mislead consumers into believing that Defendant and/or its goods and services originate from, are affiliated or connected with, or are approved by SkyBridge.

57.     The unlawful actions of Defendant, as set forth above, constitute infringement of SkyBridge's registered trademarks, in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

58.     Defendant's use of the Infringing Marks and the Infringing Domain Name is likely to cause initial interest confusion among users and potential users of financial services.

59.     Defendant's acts of infringement have caused SkyBridge to sustain monetary damages, loss, and injury, in an amount to be determined by the Court.

60.     Defendant has engaged in these activities willfully and deliberately, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

61.     Defendant's acts of infringement, unless enjoined by this Court, will continue to cause SkyBridge to sustain irreparable damage, loss, and injury, for which it has no adequate remedy at law.

## COUNT II
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

62.     SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     Plaintiff is the sole owner of the SkyBridge Marks, which are registered with the United States Patent and Trademark Office and are valid and protectable.

64.     The unlawful actions of Defendant, as set forth above, are likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that the source and/or origin of the goods and services offered by Defendant is sponsored or approved by SkyBridge in violation of 15 U.S.C. § 1125(a).

65.     The unlawful and unauthorized promotion, offer for sale, and/or sale of financial goods and services by Defendant under the Infringing Marks creates express and implied

misrepresentations that the goods and services were authorized, approved of, and/or sponsored by SkyBridge, all to Defendant's profit and SkyBridge's damage and injury.

66.    By engaging in the aforesaid acts, Defendant is unfairly competing with SkyBridge.

67.    SkyBridge has no adequate remedy at law.  Unless the activities of Defendant are enjoined, SkyBridge will suffer immediate and continuing irreparable harm to its business and reputation, and to the goodwill associated with the SkyBridge Marks.

## COUNT III
## FEDERAL TRADEMARK ANTI-DILUTION

68.    SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

69.    Plaintiff is the sole owner of the SkyBridge Marks, which are registered with the United States Patent and Trademark Office and are valid and protectable.

70.    The SkyBridge Marks are distinctive and famous, and have been used and promoted continuously throughout the United States of America since their inception.

71.    The SkyBridge Marks have received extensive publicity both as a result of the efforts of SkyBridge and through third-party recognition.  The SkyBridge Marks are famously associated and extensively recognized with the products and services of SkyBridge.

72.    By engaging in the aforesaid acts, Defendant has caused and continues to cause irreparable dilution of the distinctive quality of the SkyBridge Marks by undermining the uniqueness and distinctiveness of the SkyBridge Marks, constituting dilution by blurring of the SkyBridge Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

73.    By engaging in the aforesaid acts, Defendant has caused and continues to cause irreparable dilution of the integrity of the SkyBridge Marks by associating SkyBridge's trade name and trademark SKYBRIDGE with financial products and services that are subject to no

demonstrable quality control standards, harming the reputation of the SkyBridge Marks and constituting dilution by tarnishment of the SkyBridge Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

74.     Defendant's acts of dilution are intentional and willful.

75.     Defendant's acts of dilution have caused SkyBridge to sustain monetary damage, loss, and injury, in an amount to be determined by the Court.

76.     Defendant's acts of dilution, unless enjoined by the Court, will continue to cause SkyBridge to sustain irreparable damage, loss, and injury, for which is has no adequate remedy at law.

## COUNT IV
## TRADEMARK INFRINGEMENT UNDER TEXAS COMMON LAW

77.     SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

78.     Plaintiff is the sole owner of the SkyBridge Marks, which are registered with the United States Patent and Trademark Office and are valid and protectable.

79.     The unlawful actions of Defendant, as set forth above, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, or sponsorship of Defendant's goods and services and falsely mislead consumers into believing that Defendant and/or Defendant's goods and services originate from, are affiliated or connected with, or are approved by SkyBridge.

80.     The unlawful actions of Defendant, as set forth above, constitute infringement of SkyBridge's registered trademarks (the SkyBridge Marks, as defined *supra*), in violation of Texas common law, causing damage to SkyBridge and unjustly enriching Defendant.

81.     Defendant's use of the Infringing Marks is intentional and willful, with the intention of causing confusion, mistake, and/or to deceive consumers.

82.     Defendant's acts of infringement have caused SkyBridge to sustain monetary damage, loss, and injury, in an amount to be determined by the Court.

83.     Defendant's acts of infringement, unless enjoined by this Court, will continue to cause SkyBridge to sustain irreparable damage, loss, and injury, for which it has no adequate remedy at law.

**COUNT V**
**UNFAIR COMPETITION UNDER TEXAS COMMON LAW**

84.     SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

85.     Plaintiff is the sole owner of the SkyBridge Marks, which are registered with the United States Patent and Trademark Office and are valid and protectable.

86.     The use in commerce by Defendant of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that the source and/or origin of the goods and services offered by Defendant is sponsored or approved by SkyBridge, and by engaging in the aforesaid acts, Defendant is unfairly competing with SkyBridge.

87.     SkyBridge has no adequate remedy at law.  Unless the activities of Defendant are enjoined, SkyBridge will suffer immediate and continuing irreparable harm to its business and reputation, and to the goodwill associated with the SkyBridge Marks.

## COUNT VI
## VIOLATION OF TEXAS TRADEMARK ANTI-DILUTION STATUTE

88.     SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

89.     Plaintiff is the sole owner of the SkyBridge Marks, which are registered with the United States Patent and Trademark Office and are valid and protectable.

90.     The SkyBridge Marks are distinctive and famous in Texas, and have been used and promoted continuously throughout the United States of America since their inception.

91.     The SkyBridge Marks have received extensive publicity both as a result of the efforts of SkyBridge and through third-party recognition.  The SkyBridge Marks are famously associated and extensively recognized with the products and services of SkyBridge.

92.     By engaging in the aforesaid acts, Defendant has caused and continues to cause irreparable dilution of the distinctive quality of the SkyBridge Marks by undermining the uniqueness and distinctiveness of the SkyBridge Marks, constituting dilution by blurring of the SkyBridge Marks.

93.     By engaging in the aforesaid acts, Defendant has caused and continues to cause irreparable dilution of the integrity of the SkyBridge Marks by associating SkyBridge's trade name and trademark SKYBRIDGE with financial products and services that are subject to no demonstrable quality control standards, harming the reputation of the SkyBridge Marks and constituting dilution by tarnishment of the SkyBridge Marks.

94.     Defendant's aforesaid acts violate Texas Bus. Comm. Code § 16.103.

95.     Defendant's acts of dilution are intentional and willful.

96.     Defendant's acts of dilution have caused SkyBridge to sustain monetary damage, loss, and injury, in an amount to be determined by the Court.

97.     Defendant's acts of dilution, unless enjoined by the Court, will continue to cause SkyBridge to sustain irreparable damage, loss, and injury, for which is has no adequate remedy at law.

## COUNT VII
## UNJUST ENRICHMENT

98.     SkyBridge repeats and realleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     The acts of Defendant complained of herein constitute unjust enrichment of Defendant at the expense of SkyBridge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief and that the Court enter judgment against Defendant as follows:

1.     That Defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of the foregoing, be enjoined and restrained preliminarily and permanently:

   a)   from adopting or using, the marks SKYBRIDGE and SKYBRIDGE WEALTH MANAGEMENT, or any confusingly similar or legally equivalent formatives thereof ("Marks"), in any manner whatsoever, including, but not limited to, in connection with the promotion, advertising, offer for sale, sale, performance, or rendering of financial goods and services in the United States;

b) from adopting, using, registering or seeking to register any business name, company name, corporate name, fictitious business name, or other business identifier that include the Marks or any portion thereof, in any manner whatsoever;

c) from adopting, using, registering or seeking to register the Marks, or any portion thereof, as a trademark, service mark, trade name, brand name, logo, design, or other similar designation of source, sponsorship, association or origin, including, but not limited to, filing federal or state applications for registration of the Marks, or any portion thereof, as a trademark or service mark, for goods or services relating to the financial services industry;

d) from adopting, using, registering or seeking to register the Marks, or any portion thereof, on any social media platforms, in any manner whatsoever, or as part of an Internet domain name, subdomain name, Uniform Resource Identifier, or other electronic business identifier, including but not limited to, as an email address, social media handle or as part of Twitter, Facebook, Google Plus, and similar promotional or informational media sites;

e) from adopting or using any false descriptions or representations, or any false designations of origin, or from otherwise committing any acts of unfair competition in connection with the Marks with respect to Plaintiff;

f) from diluting by blurring or tarnishment Plaintiff's registered trademarks SKYBRIDGE, SKYBRIDGE CAPITAL, and SALT SKYBRIDGE ALTERNATIVES CONFERENCE & Bridge Design;

g) from committing any acts calculated to cause consumers to believe that Defendant's goods and services are sold under the control or supervision of the Plaintiff, or are sponsored, approved by, connected with, guaranteed by, or produced under the control and supervision of the Plaintiff;

h) from further infringing Plaintiff's registered trademarks SKYBRIDGE, SKYBRIDGE CAPITAL, or SALT SKYBRIDGE ALTERNATIVES CONFERENCE & Bridge Design, and from further damaging Plaintiff's reputation and goodwill in the foregoing registered trademarks;

i) from manufacturing, importing, shipping, delivering, distributing, offering to the public, or otherwise disposing of any goods which bear the Marks;

j) from otherwise competing unfairly with Plaintiff in any manner whatsoever.

2.     That Defendant assign to Plaintiff the domain name www.skybridgewealthmanagement.com, as well as any other domain names using the mark SKYBRIDGE or SKYBRIDGE WEALTH MANAGEMENT, or confusingly similar or legally equivalent formatives thereof;

3.     That Defendant account for and pay to Plaintiff any profits realized by Defendant by reason of Defendant's unlawful and willful acts as alleged herein;

4.     That Plaintiff be awarded damages, including under 15 U.S.C. § 1117  in an amount to be proven at trial and punitive damages in an amount to be proven at trial;

5.      That the amount of damages for infringement of Plaintiff's registered trademarks be increased by a sum not exceeding three times the damages awarded as provided by law;

6.      That Plaintiff be awarded interest, including pre-judgment interest, on all awarded damage amounts;

7.      That Plaintiff be awarded its costs and reasonable attorneys' fees, including pursuant to an exceptional case finding under 15 U.S.C. § 1117, and such further and other relief as the Court may deem equitable.

8.      That Plaintiff be granted such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all issues so triable as raised by this Complaint.

Dated:   June 10, 2015

By:   /s/   John J. Edmonds
John J. Edmonds (Attorney-in-Charge)
Federal Bar No. 22110
Texas Bar No. 789758
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 S. Voss Rd., Ste. 125
Houston, Texas 77057
(713) 324-5291
(832) 415-2535 (fax)
Email: jedmonds@cepiplaw.com

OF COUNSEL:
Laura Goldbard George
STROOCK & STROOCK &
LAVAN LLP
180 Maiden Lane
New York, NY 10038-4982
(212) 806-6675
(212) 806-6006 (fax)
Email: lgoldbard@stroock.com

ATTORNEYS FOR PLAINTIFF,
SKYBRIDGE CAPITAL II, LLC